(December 11, 1891.)

PENCE ET AL. v. SWEENEY ET AL.

[28 Pac. 413.]

INTERVENER — PLEADINGS—CONVEYANCE—MINING     CLAIM—MISTAKE—
INADVERTENCE—PROCEEDS OF SALE—NONSUIT.

SUFFICIENCY OF COMPLAINT IN INTERVENTION.—The court below
allowed McLelland to intervene. Held, that his complaint in
intervention sets forth facts sufficient to bring him within the
requirements of section 4111 of the Revised Statutes of Idaho.

COMPETENCY OF RECEIPT AND RELINQUISHMENT AS TESTIMONY.—A
receipt and relinquishment signed by the defendants, although
made without the knowledge or consent of the attorneys of record,
are testimony in favor of plaintiffs, and it is error for the trial
court to refuse to receive the same.

AN ANSWER ADMITTING ALLEGATIONS OF COMPLAINT EVIDENCE FOR
PLAINTIFF.—A paper in the form of an answer, verified by the
defendants, admitting that the allegations of the complaint are
true, and consenting that the plaintiffs are entitled to a judg-
ment as prayed for in the complaint, is a sworn admission of
the defendants. The court erred in refusing to admit the same
in evidence on behalf of plaintiffs, although said sworn statement
was made without the knowledge or consent of defendants' attor-
neys of record.

JURISDICTION OF COURT TO DETERMINE RIGHTS OF PLEADINGS.—Un-
der the pleadings, the court had jurisdiction to hear and deter-
mine the question as to whether a mistake had been made in
the deed of conveyance from Sebring, Ward, and Altizer to Pence
and Starr, and whether the conveyance from Ward to Brown was
a cloud upon plaintiff's title, and in case the mine was sold before
the adjudication of said matters and the proceeds of the sale of
the interest in dispute deposited in court, the court had juris-
diction under the pleadings to determine the rights of plaintiffs
thereto.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

Albert Hagan and Frank Ganahl, for Appellants.

Equity will not permit litigation by piecemeal, but will de-
termine the whole controversy, so as to prevent future litigation.
(*Chester v. Hill,* 66 Cal. 484, 6 Pac. 132; *Cross v. Zellerbach,*
63 Cal. 643; *Kraft v. De Forest,* 53 Cal. 657; *Quivey v. Baker,*

37 Cal. 472; *Wilson v. Castro,* 31 Cal. 421; *McPherson v.,
Parker,* 30 Cal. 456, 89 Am. Dec. 129.)   A *cognovit* is good as
an admission *in pais* after answer is filed, and can be put in
evidence upon the trial.   (*Hirschfield v. Franklin,* 6 Cal. 608.)
A party's answer in chancery is evidence against him by way
of admission.   (*Fickett v. Swift,* 41 Me. 65, 66 Am. Dec. 214;
*Elliott v. Hayden,* 104 Mass. 180; *Knowlton v. Moseley,* 105
Mass. 136; *Cook v. Barr,* 44 N. Y. 158; *Wylder v. Crane,* 53
Ill. 490; *Lawrence v. Lawrence,* 21 N. J. Eq. 317.)   Compro-
mises of suits are favored; and are binding upon the parties,
and will never be set aside or questioned except for fraud or
imposition.   (*Draper v. Owsley,* 15 Mo. 613, 57 Am. Dec. 218;
*Leach v. Fobes,* 11 Gray, 506, 71 Am. Dec. 732; *Grandin v.
Grandin,* 49 N. J. L. 508, 60 Am. Rep. 642, 9 Atl. 756; *Dun-
man v. Hartwell,* 9 Tex. 495, 60 Am. Dec. 177.)   A release
given by a client is a bar to any further prosecution of the ac-
tion by him.   It is an estoppel.   (*Coughlin v. Railroad Co.,*
71 N. Y. 443, 27 Am. Rep. 75.)

Woods & Heyburn, for Respondents.

A court of equity will not relieve third   parties from a mis-
take of law.   (2 Pomeroy's Equity Jurisprudence, secs. 842-
846, 849; *Hunt v. Rousmanier,* 8 Wheat. 174; *Bank v. Daniel,*
12 Pet. 52; *Jacobs v. Morange,* 47 N. Y. 57; *Bentley v. Whitte-
more,* 18 N. J. Eq. 366.)   Anyone who has an interest in the
matter in litigation, in the success of either of the parties,
or an interest against both, may intervene.   (Comp. Laws,
sec. 4111.)

SULLIVAN, C. J.—This is an appeal from a judgment
and order dismissing appellants' complaint and cause of action.
The complaint alleges that on the twenty-first day of May,
1888, the plaintiffs were the owners of the Sitting Bull lode
mining claim.  · That the said claim was located by one J. A.
Ward and John W. Sebring in the year 1885.   That thereafter
the said Sebring sold one-half of his interest in said claim, to
wit, an undivided one-fourth, to one David Altizer, and there-
after said persons owned their respective interests therein as

tenants in common. That, for the purpose of developing said mining claim, they entered into a contract with the plaintiffs, C. G. Pence and one L. J. Starr, whereby the said Pence and Starr agreed to do certain work in the development of said claim, and for which they were to receive an undivided one-half of the respective interests of the said Sebring, Ward, and Altizer. That upon the completion of · such work the said Ward, Sebring, and Altizer were to execute and deliver to said Pence and Starr a deed of conveyance conveying to them an undivided one-half of their respective interests in said claim. That after the completion of said work by Pence and Starr the said Ward, Sebring, and Altizer executed to them a certain deed, but, instead of designating the respective interests to be conveyed by each grantor under the contract aforesaid, they, by mistake and inadvertence, conveyed by said deed an undivided one-half of said mining claim. That thereafter Starr sold and conveyed his entire interest in said claim to Pence. That Pence thereafter purchased of said Sebring an undivided one-eighth interest in said claim. That thereafter C. E. Kingman (one of the appellants) purchased of the. said Altizer an undivided one-eighth of said claim. That thereafter one O. Kingman bought of said Ward all his right, title, and interest in and to said claim, as at that time said Ward believed he possessed an undivided one-quarter thereof. That, by the original deed from Ward, Sebring, and Altizer to said Pence and Starr, it was the intention of the parties to convey to said grantees an undivided one-half of each of their respective interests in and to said claim, to wit, Ward an undivided one-quarter, that being one-half of his interest; Sebring an undivided one-eighth, that being one-half of his interest; and Altizer an undivided one-eighth, that being one-half of his interest therein. That the mistake was made by conveying an undivided one-half of said lode, and not designating the undivided interest which each was to convey under the agreement with Pence and Starr. That thereafter the defendant Brown, with notice that Ward had already sold all of his right, title, and interest in and to said lode claim to O. Kingman, and knowing that said Ward had no interest therein,

being so notified by said Ward, procured from said Ward a quitclaim deed for all of his interest in said claim. That said O. Kingman conveyed all of his interest in and to said claim to the plaintiff Charles E. Kingman, and that the plaintiffs. (the appellants in this court) were then the owners of said entire mining claim. That Sweeney, one of the defendants, was, at the date of such conveyances an employee in the recorder's office of Shoshone county, and that it was by his investigation and suggestion, on information acquired from an inspection of the records of said county, that the apparent interest of said Ward, of the one-twelfth of said mine, was suggested to said Brown, and the conveyance from Ward to Brown thereafter procured. The complaint further alleges that said Sweeney and Brown have contracted, by bond, to convey to defendant Evans the one-twelfth interest so obtained from Ward, and to receive therefor $3,000, and for such purpose Brown has deposited with Sweeney his deed to said Evans, to be delivered upon payment to Sweeney of the sum of $3,000. That said Brown is to convey to said Sweeney said one-twelfth interest in said mine in the event of Evans not paying said $3,000. That Evans is made a party, because he is deemed a necessary party to the enforcement of the judgment or decree prayed for. That plaintiffs do not desire to destroy the sale of said mine, but simply that the proceeds of the sale of said one-twelfth interest be paid to plaintiff in event of a sale being consummated. The answer admits the discovery and location of the said claim, and the conveyance thereafter by Sebring of one-half of his interest therein to Altizer. Admits the making of the deed by Ward, Sebring, and Altizer to Pence and Starr, but explains Ward's connection with the making of the contract with Pence and Starr for the development of the claim, and the execution of the deed to them, and denies that any mistake was made in the execution of said deed.

Prior to the trial of the case the mine was sold under the bond referred to, and the parties entered into a stipulation whereby the money for the one-twelfth interest was deposited with the clerk of the court, subject to the adjudication by the court of the question as to the party entitled thereto. On

January 16, 1891, one Thomas E. McLelland was allowed to intervene. The complaint of intervention does not demand any relief in the subject matter of the suit as to the mining claim, but alleges that one-half of the money which had been deposited in court, under the stipulation aforesaid, on June 25, 1888, had been assigned to said intervener by said Sweeney and Brown, on July 30, 1888. To this complaint of intervention plaintiffs filed an answer denying the same. The cause came on for trial on June 3, 1891. The plaintiffs offered in evidence certain paper writings, claimed to have been executed by the defendants, admitting the allegations of the complaint, and consenting that judgment be taken against them as prayed for in the complaint, all of which were, under the objections of counsel for defendants and intervener, excluded by the court. Thereupon certain oral testimony was offered, and for like reason rejected by the court. Plaintiffs thereupon rested. Counsel for the defendants and intervener moved for a nonsuit, which motion was granted, and judgment of dismissal entered. From which order and judgment the appellants bring the case to this court, and demand a reversal thereof, and assign seven specifications of error therefor.

The first error assigned is that "the court erred in allowing McLelland to intervene at all." In order to intelligently pass upon this specification of error, we shall need to refer to the pleadings at some length. The plaintiffs allege in the fifteenth paragraph of the complaint that a sale of the mine in controversy is pending for the sum of $36,000, one-twelfth of which sum, by the terms of the bond to defendant Evans, is to be paid to the defendant Sweeney. That said Evans is made a party because plaintiffs deem him to be a necessary party to the enforcement of the decree prayed for. That plaintiffs are not desirous of defeating said sale for said one-twelfth interest of said mine, but that, in the event of a sale being completed, the proceeds should be paid to plaintiffs, and not to said Brown and Sweeney. The second paragraph of the prayer of complaint is, in substance, that said money be paid to plaintiffs, in the event a sale is consummated under said bond. It appears from the record that a stipulation was entered into by

the parties, through their attorneys, in regard to the sale of the said one-twelfth interest of said mine, and the deposit of the proceeds with the clerk, which stipulation is as follows:

"[Title of the Court and Cause.]

"It is hereby stipulated that, under the bond mentioned in the complaint, the sum of $16,500, and no more, was due upon the purchase price of the Sitting Bull lode mining claim at the time this action was commenced; that under the contract with Evan Evans, mentioned in the complaint, the said Evans or his assigns can make payment into court of the amount to be due to-morrow, and a further sum payable July 21, 1888, to the said M. J. Sweeney, being in the aggregate $1,416.66, less $72.50, and, upon final payment being made into court, that plaintiffs will release all of the one-twelfth interest of, in, and to the Sitting Bull lode claim from any liability in this action, the fund then in court to be the only matter involved in this action, and notice of *lis pendens* to be withdrawn and vacated as soon as the first payment shall be made. The said fund to remain in court subject to the adjudication of the court as to the party entitled thereto.

"Dated June 25, 1888.        GANAHL & HAGAN,
"Plaintiffs' Attorneys.

"We agree to this.

"WOODS & HEYBURN,
"Attorneys for Defendants.
"C. E. KINGMAN,
"By His Attorney in Fact, O. Kingman.
"C. G. PENCE.

"[Indorsed:] Filed June 15, 1889."

The complaint in intervention alleges that the intervener, for a valuable consideration, on the thirtieth day of July, 1888, purchased from defendants Sweeney and Brown a one-half interest in and to the fund deposited with the clerk of said court, as aforesaid. The intervener claims an interest in said fund, and comes within section 4111 of the Revised Statutes of Idaho, which permits any person to intervene who has an interest in the matter in litigation. There was therefore no error in permitting McLelland to intervene.

The second specification of error is as follows: "The court erred in excluding from evidence the receipt or relinquishment of Sweeney and Brown." The said receipt or relinquishment purports to be the written admission of the defendants that the allegations of the complaint are true, and was testimony in favor of the plaintiffs, which they were entitled to have the benefit of. There was error in rejecting the same.

The third specification of error is as follows: "The court erred in excluding the sworn answer of Sweeney and Brown." The transcript contains the paper designated as the sworn answer of Sweeney and Brown, in which they ask to withdraw the answer theretofore filed, and in answer to the complaint "admit each and singular the allegations averred in the complaint," and authorize judgment to be entered according to the prayer of the complaint. The record shows that counsel for the plaintiffs stated to the court below, at the time said paper was offered in evidence, that they offered the said paper in evidence to show, first, a settlement of the case between the plaintiffs and defendants, and also as an admission by each of the defendants that the complaint was true and correct, and a confession of the defendants that the plaintiffs were entitled to judgment as prayed for in the complaint, and as to the truth of the allegations of the complaint admitted by the defendants, and as a solemn admission that the answer of the defendants on file was untrue, and as a proof that the defendants desired to withdraw their answer, and as an order to withdraw the same, and as a relinquishment, by the defendants to plaintiffs, of all their right to the fund on deposit with the clerk, and as an assignment of all and every part of that fund to the plaintiffs. The paper offered purported to be the sworn admission of the defendants that the allegations of the complaint were true, and that the plaintiffs were entitled to the funds in the hands of the clerk; all of which was testimony in favor of the plaintiffs, and should have been admitted. The court erred in rejecting the same.

The fourth specification of error is as follows: The court erred in sustaining the objection to the question asked the witness Kingman: "Did you, at any time, pay defendants Sweeney

and Brown any money for their interest in this property?" The record shows that the witness to whom the question was propounded was O. Kingman, who is not a party to this action. We cannot perceive the materiality of the question, unless it should be shown that such money was paid for on behalf of the plaintiffs or appellants. The record shows that the receipt and the paper designated as the "sworn answer" of the defendants were executed without the knowledge or consent of their attorneys of record, and it is intimated in the brief of respondents that counsel for appellants had made a surreptitious settlement with the respondents Sweeney and Brown, and had procured from them said receipt and answer, without the knowledge or consent of counsel for respondents, but we find nothing in the record to justify such intimation or conclusion. It is true, however, that someone procured such papers from the respondents, or that they delivered them without solicitation; but we are loath to believe that any attorney of this bar would enter into surreptitious dealings with clients of opposing counsel for a compromise, settlement, or management of the case. Chief Justice Sanderson, in the case of *Commissioners v. Younger,* 29 Cal. 150, has very clearly expressed the mind of this court upon such dealings, in the following language: "It is proper to add that to entirely ignore the attorney of record, and enter, without his consent, into secret negotiations with his client, touching the management of his case, is unbecoming the dignity of the legal profession, and destructive to the courtesy, which is due from one member to another." However, if clients make settlements, compromises, and admissions, without the knowledge and consent of their attorneys of record, they cannot, for that reason, escape the consequences of such settlements, compromises, and admissions, if they are offered in evidence against them. (*Coughlin v. Railroad Co.,* 71 N. Y. 443, 27 Am. Rep. 75.)

The sixth specification of error is as follows: The court erred in excluding the answer to the question: "Did you ever have any notice of any assignment of any part of this fund to anyone?" The record shows that said question was propounded

to O. Kingman, who is not a party to this suit. We fail to discover how the answer thereto from said witness could be material. There was no error in refusing to allow the witness to answer the same.

The seventh specification of error is as follows: "The court erred in refusing the motion of plaintiffs to proceed to hear and determine the rights of plaintiffs to the fund deposited with the clerk." The record contains the reason, as stated by the court below, why it refused to proceed and determine the rights of the plaintiffs to said fund, and is as follows: "Now, at this time the court, having examined the pleadings in this case and a certain stipulation on file, and it appearing thereupon [therefrom], and from the admissions of counsel on both sides, that all the interest in the mining claims contested for 'in the suit had been sold, and the money paid into court, and there is nothing before the court except the disposal of that money, and it being an effort on the part of the parties to this transaction to convert an action to quiet title into a suit for money, a practice not allowed by this court, it is ordered that this case be dismissed from the further consideration of the court." The fifteenth paragraph of the complaint, above set forth, avers facts sufficient to give the court jurisdiction of the fund in the hands of the clerk; and by the second paragraph of the prayer of the complaint the plaintiffs demand that, in the event of the sale mentioned in the fifteenth paragraph of the complaint being consummated, one-twelfth of the sum for which the whole mine was sold be paid to the plaintiffs. Evan Evans had the bond on the mine, and he is made a party to the action, so that, in case a sale is made, the court will have jurisdiction to enforce its judgment or decree, in case one is entered in accordance with the prayer of the second paragraph of said complaint. Under the pleadings, the court had jurisdiction to determine whether or not the undivided one-twelfth interest in and to said mine was the property of the plaintiffs; and if, when that fact was determined, the mine had been sold and the money paid into court, it had jurisdiction to determine whether plaintiffs were entitled to said

money or not. Equity does not favor a multiplicity of suits, and will not permit litigation by piecemeal, but favors determining the whole controversy so as to prevent future litigation. (*Chester v. Hill,* 66 Cal. 484, 6 Pac. 132; *Cross v. Zellerbach,* 63 Cal. 623; *Kraft v. De Forest,* 53 Cal. 657; *Quivey v. Baker,* 37 Cal. 472; *Wilson v. Castro,* 31 Cal. 421; *McPherson v. Parker,* 30 Cal. 456, 89 Am. Dec. 129.) The court had jurisdiction of the parties and the subject matter, and should have determined the controversy. The court erred in refusing to determine the rights of plaintiffs to the fund deposited with the clerk.

The conclusions that we have arrived at in regard to the second, third, and seventh specifications of error make it unnecessary for us to say anything in regard to the eighth specification of error, except to say that the court erred in granting the nonsuit, and entering judgment of dismissal. The judgment of the court below is reversed, and the case remanded to the court below, with instructions to proceed and try the case and determine the issues as indicated in this opinion.

Morgan and Huston, JJ., concur.